CROWDER *vs.* HOPKINS and others.

The recollection of witnesses as to the hand-writing of an obscure individual, who had very few business transactions, are very little to be relied on after the lapse of the third of a century, in opposition to the certificate of an acknowledgment of the deed by the grantor in person.

Previous to the act of February, 1797, relative to the acknowledgment of deeds, it was not necessary that the certificate should state the fact that the officer knew the person making the acknowledgment to be the grantor described in the deed, or that his identity had been proved.

The act of January, 1794, relative to conveyances of military bounty lands, which required an actual acknowledgment by the grantor, and which prohibited the judge or master from taking the acknowledgment unless he knew, or had satisfactory proof, that the person making the acknowledgment was the same person described in the conveyance, did not require these facts to be stated in the certificate of acknowledgment.

A deed of military bounty lands, executed in June 1797, does not come within the operation of the 5th section of the act of February 1798, in relation to

1843.

Crowder
v.
Hopkins.

the recording of deeds of military lands; being executed after the 1st of May, 1797. And if such deed was executed and acknowledged according to the act of January 1794, prior to December 1797, it was exempted from the operation of the act of February 1797, by the supplementary act of the 23d of February 1798.

The act to settle disputes concerning title to lands in the county of Onondaga is constitutional and binding as an act of limitations in relation to disputed titles; and an award of the commissioners, made under it, is conclusive as to the legal title unless a dissent was entered within two years from the date of such award.

Such dissent was necessary to prevent the award from being a bar to a claim of title in any other person than the one in whose favor the award was made, although no person was in possession of the land when the award was made.

To render a deed admissible in evidence as an ancient deed, an uninterrupted possession must have been held under and in conformity to it for thirty years.

The acts and declarations of a grantor, made subsequent to his conveyance, are not admissible as evidence against his grantee.

April 4. THIS was an appeal from a decree of the vice chancellor of the seventh circuit, dismissing the bill in this cause. The original bill was filed in July 1822, by James Hole, the patentee of lot No. 85 in Brutus, in the Military Bounty Tract, against W. Torrey and wife; and also against twenty-four other defendants, most of whom then were, or theretofore had been, in possession of different portions of the lot, claiming the legal title to their respective portions under conveyances from Torrey. The subpœna was served upon Torrey and wife soon after the filing of the bill, and they put in their answer in May 1823. Most of the other defendants were served with process to appear and answer previous to July 1823, when the suit abated by the death of Hole. In 1827, Crowder, the appellant, to whom Hole had devised the premises, was substituted as the complainant in the suit, by a bill of revivor and supplement; and in the joint characters of devisee and executor of the original complainant. Torrey and wife put in their answer to the bill of revivor and supplement; and twenty-two of the other defendants, who were then living, put in their joint and several answers to the original bill and to the bill of revivor and supplement. After the proofs in the cause had been closed, Torrey, and some of the other defendants in

the original bill and in the bill of revivor and supplement, died ; and the suit was again revived, against the heirs and devisees and against the personal representatives of such deceased parties.

The facts in the case as to which there was no dispute were as follows : The lot in question was patented to Hole the original complainant.   In December 1803, De Witt Clinton claimed to be the owner of the lot, and to have derived title thereto through divers mesne conveyances from Asa Ballard, who had a deed for the lot, dated in August 1791, purporting to have been executed by Hole the patentee; which deed was filed and registered, as required by the act of January 1794 directing deeds and conveyances of lands in the military bounty tract, theretofore given, to be deposited with the clerk of the county of Albany and registered within a limited period.   On the 9th of December 1803, Clinton conveyed 300 acres of the lot to J. Hamilton ; and in June 1804, he conveyed the residue of the lot, except the state's 100 acres, to David Hopkins, who a few days thereafter conveyed the same to Ira Hopkins, one of the defendants in this suit.   Soon after the execution of these deeds, Hamilton and Ira Hopkins went into possession of the parts of the lot conveyed to them respectively ; and they, or their grantees, continued in possession, claiming under that title, until September 1817, when they took conveyances from Torrey as hereafter stated.   On the 3d of February 1798, Torrey procured a deed to be recorded in the clerk's office of Onondaga county, in which county the lot was then situated, purporting to have been duly executed by Hole, on the 27th of June, 1797, and which was acknowledged by the grantor on the day of its date, before J. M. Hughes, a master in chancery in the city of New-York ; by which deed the premises were conveyed absolutely to Torrey, in fee, for the consideration of £100.   And in December 1799, the Onondaga commissioners awarded to Torrey the fee of the whole lot, as the absolute owner thereof, except the state's 100 acres.   From

that award neither Hole, nor the persons in possession claiming under the Ballard title, entered any dissent.

In 1817, Torrey commenced ejectment suits against Hamilton and Hopkins, and their grantees of different portions of the lot ; and they being advised by their counsel that they could not successfully defend their possessions under the Ballard title, on the ground that the award not having been dissented from was conclusive in favor of the validity of Torrey's title to the lot, agreed to compromise with him by paying at the rate of $9 an acre for the land, and the costs of the ejectment suits.    The defendant Burnham, who had a power of attorney for that purpose from Torrey, thereupon executed deeds in fee, in the name of Torrey, to the occupants of the premises, for their respective portions of the lot ; which deeds were duly acknowledged and recorded.    A part of the purchase money was paid upon the execution of the deeds, and mortgages were given for the residue, by the grantees, upon their several lots ; some of which mortgages were paid in full before the commencement of this suit, and before the purchasers had notice of the claim made by Hole in his bill.    And the residue of the purchase money was paid to Burnham, as the agent of Torrey, after the death of Hole and before the suit was revived by Crowder in 1827.    Some of the grantees in the deeds from Torrey also conveyed their interests in the premises to bona fide purchasers previous to the commencement of this suit ; all of which purchasers and subpurchasers, with the exception of one or two, were made defendants in the suit.    And five or six persons were made defendants who never had or claimed any interest in the land either as purchasers or otherwise, and who answered and disclaimed.

The substance of the charge in the complainant's bill was that Hole never sold or knowingly conveyed the lot to Torrey ; that he had been a waiter to Torrey, as an officer in the army, and had great confidence in him ; that in 1796 he had attempted to take possession of the lot and was forcibly expelled by pretended settlers thereon ; that Torrey,

in June 1797, promised to obtain the possession of the premises for him if he would give him a power constituting him his agent for that purpose ; that Torrey afterwards brought him an instrument in writing to be executed, representing it to be such a power, and which he executed without reading or hearing it read ; and that by virtue of such pretended power Torrey had obtained possession of the lot, and had sold the same to the other defendants, all of whom well knew that Torrey had no legal or equitable title to the premises, and had no right to dispose of or deed the same. The answer of Torrey positively denied every allegation of fraud stated in the bill, or that he ever assumed to act as the agent of Hole, or pretended to receive from him a power in relation to the lot in question. On the contrary he stated that Hole requested him to buy the lot, which he at first refused to do, but finally consented to buy it for £100, which he afterwards paid him ; that Hole executed the conveyance as an absolute deed, and acknowledged it before Gen. Hughes, the master ; and that the receipt for the purchase money was endorsed upon the deed, upon the suggestion of the master that it was the usual and proper course, though the payment was not actually made at that time. Hopkins and Treat, two of the defendants, also stated in their answers that in the summer of 1809 or 1810, while they were in possession of parts of the lot, claiming under the Ballard title, Hole called on them and requested them to maintain him ; and that on being told that he had sold and conveyed the lot to Ballard under whom they had derived their title, he said they had not got a good title, for he had sold the lot to W. Torrey and had given him a deed therefor, and that Torrey was the owner and would hold the lot.

*J. W. Gerard,* for the appellant.

*John Porter,* for the respondents.

1843.

Crowder
v.
Hopkins.

1843.

Crowder
v.
Hopkins.

THE CHANCELLOR. The question whether the deed from Hole to Torrey, of the 27th of June, 1797, is genuine does not properly arise in this case, as there is no charge in the complainant's bill that the deed is a forgery. The only charge which, if proved, would entitle the complainant to equitable relief is that Torrey agreed to act as his agent, to recover the land from settlers who were holding it adversely, and that under pretence of getting Hole to execute a power of attorney to recover the land, he had obtained from him a conveyance of the premises. For if the decision of the case is to turn upon the question whether the defendants have established a paper title to the premises, the decree of the vice chancellor is unquestionably right. The recollection of witnesses as to the character of the handwriting of an obscure individual, who had very few business transactions, are very little to be relied on, after a lapse of the third of a century, in opposition to the certificate of the acknowledgment of the deed by the grantor in person. And I am satisfied that the objection to the certificate of acknowledgment was not well taken. Previous to the act of February, 1797, relative to the acknowledgment of deeds, it was not necessary that the certificate should state the fact that the officer knew the person who made the acknowledgment to be the grantor described in the deed, or that his identity was proved. (*Bradstreet* v. *Clarke*, 12 *Wend. Rep.* 673.) The act of January, 1794, relative to conveyances of military bounty lands, (3 *Greenl. Laws*, 45,) which required an actual acknowledgment by the grantor, prohibited the judge or master from taking the acknowledgment unless he knew or had satisfactory proof that the person making the acknowledgment was the same person described in the conveyance ; but it did not require that fact to be stated in the certificate. And in consequence of this defect in the act of 1794, the 5th section of the act of the 12th of February, 1798, was passed, prohibiting the recording of deeds of military bounty lands executed previous to the 1st of May preceding, when the act of February, 1797, went into effect, unless they were proved or acknowledged

in the manner directed by the last mentioned act. (1 *R. L. of* 1813, *p.* 216. *Jackson* v. *Shepherd*, 2 *John. Rep.* 77.) The deed in question, however, did not come within the operation of this section of the act of 1798, because it was executed after the 1st of May, 1797. And being executed and acknowledged according to the act of 1794, relative to conveyances of military bounty lands, and prior to the 1st of December, 1797, it was exempted from the operation of the act of February, 1797, by the supplementary act of the 23d of February, 1798, (3 *Greenl. Laws,* 328 ;) which last act in effect extended the time when the act of 1797 should take effect, until the 1st of December, instead of the 1st of May in that year. The deed to Torrey was therefore properly recorded, being acknowledged by the grantor according to the act of 1794, and his identity being also proved by the affidavit of one of the subscribing witnesses, taken before the master and endorsed upon the deed immediately below the certificate of acknowledgment and at the same time.

Again ; upon the question whether Torrey was the owner of the premises previous to his conveyances to Hopkins, Hamilton, Taylor, Burns, Loop, Dixon and Treat, so far at least as relates to the legal title, the award of the commissioners was as conclusive against Hole as it was against the defendants who were then in possession, claiming under Hole's previous deed to Ballard. In *Jackson* v. *Griswold,* (5 *John. Rep.* 140,) the supreme court decided that the act, under which this award was made, was constitutional and binding as an act of limitations in relation to disputed titles ; and that if there was no dissent filed within the time prescribed the award was conclusive. And a dissent was necessary to prevent the award from being a bar to a claim of title in any other person, although no person was in possession of the land when the award was made. (*Jackson* v. *McKee*, 8 *John. Rep.* 429. *Jackson* v. *Swartwout, Idem,* 490.) As between persons claiming the premises under Torrey, and others who claim title under Hole either through the Ballard deed or otherwise, the award is conclusive in favor of the title of Torrey. But if Hole

never gave the deed to Torrey, there is no privity between him and Torrey ; and the defendants who have derived title to the premises through the Ballard deed, as well as from Torrey, may set up the award to Torrey as a bar to the legal claim of Hole or his devisee, or may set up the validity of the Ballard deed as against them, notwithstanding the award.

The deed to Ballard, and the several mesne conveyances under which Hamilton and Hopkins originally claimed title to the premises, were distinctly referred to in the answer of the occupants of the lot. It was not necessary, therefore, that those conveyances should have been made exhibits before the examiner, or that a notice of the intention to use them on the hearing should have been given. But if the Ballard deed was not duly proved or acknowledged, I think it was not admissible in evidence as an ancient deed. For it was cut off by the award in favor of Torrey. And the occupants of the land having taken title under Torrey, in 1817, their possessions had not been held under and in conformity to the deed to Ballard, for thirty years, within the spirit of the rule on that subject. (*Jackson* v. *Blanshan*, 3 *John.* 297.) From some of the declarations of Hole there is reason to suppose the deed to Ballard was genuine, and that he was conscious of having done wrong in conveying the property the second time, to the injury of those who were in possession under the Ballard deed. But it is not necessary for the occupants of the land to resort to the Ballard title for their protection in this case ; for I am satisfied the complainant has wholly failed in making out a case entitling him to any relief against them.

None of the acts or declarations of Torrey which took place or were made after the conveyances to the occupants of the land, in 1817, can be received as evidence against his co-defendants ; either to show that he acted as the agent of Hole to obtain the land from the settlers, or that he was conscious of having defrauded him. And the part of the answer in which it is stated that Hole told Hopkins and Treat that he had sold and conveyed the land to Torrey, is responsive to the allegation in the bill that when Torrey

sold them the land they knew he had no title to the land, and had no right to dispose of it. It is therefore evidence in their favor. And it is also supported by the testimony of Barber, who swears that Hole said, while he was at Hopkins' house in 1809 or 1810, that he had sold the lot to Torrey and that Torrey had a good title.

Nor do I think there is any sufficient proof to destroy the positive answer of Torrey, directly responsive to the bill, denying that he assumed to act as the agent of Hole in the recovery of the land ; and stating that he purchased the land for the price of £100, and that it was conveyed to him by Hole absolutely and unconditionally.

The decree of the vice chancellor is therefore affirmed, with costs as to all the defendants. And the decree of affirmance is to be entered nunc pro tunc as of the time of the argument of the appeal.